UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|---|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Terri Hourigan | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Erin Tallent | Jay Ramsey |
| Melanie Cockrum | |

**Proceedings:**     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 51, filed on November 15, 2024)

## I.     INTRODUCTION

On August 11, 2023, plaintiff Volkswagen Group of America, Inc. ("Volkswagen") filed suit against defendants On-Line Administrators, Inc. dba Peak Performance Marketing Solutions ("Peak"), On-Line Administrators, LLC, and Affinitiv, Inc. ("Affinitiv") (collectively "defendants") in this Court. Dkt. 1 ("Compl."). Plaintiff brings claims for: (1) express contractual indemnity; (2) equitable indemnity; (3) declaratory relief; and (4) breach of contract, arguing that defendants were obligated to indemnify plaintiff in a third-party lawsuit that was filed against both parties. Id.

On October 12, 2023, defendants filed a motion to dismiss. Dkt. 14. On November 15, 2023, the Court denied defendants' motion as to plaintiff's four claims, but granted defendants' motion as to plaintiff's prayer for attorneys' fees. Dkt. 22.

On November 15, 2024, Volkswagen filed the instant motion for partial summary judgment. Dkt. 51 ("MSJ"). Volkswagen concurrently filed a statement of uncontroverted facts, dkt. 52, and a request for judicial notice, dkt. 53. On December 30, 2024, defendants filed an opposition. Dkt. 57 ("Opp."). On the same day, defendants filed a statement of genuine disputes. Dkt. 57-1. On January 13, 2025, Volkswagen filed a reply. Dkt. 58 ("Reply"). It concurrently filed evidentiary objections, dkt. 59, and a response to defendants' statement of genuine disputes, dkt. 60 ("SUF").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

On January 27, 2025, the Court held a hearing. Volkswagen's motion for partial summary judgment is presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

### A.    Purchase Orders

In 2008, Volkswagen launched its Target and Retain After Sales Customer ("TRAC") program and retained Peak to contact customers, first by written correspondence and then by telephone, on behalf of Volkswagen. SUF ¶¶ 1-2. Volkswagen contracted for Peak's services through Purchase Orders, whereby Volkswagen sent Peak purchase orders for the work to be performed, Peak issued invoices for payment for the work done pursuant to the Purchase Orders, and Volkswagen paid Peak the amounts in the invoices for the work performed. Id. ¶ 3.

On October 12, 2010, Volkswagen contracted for Peak's services through Purchase Order No. 4500312325 ("2010 Purchase Order"), which included the work to be performed by Peak for three years, starting on January 1, 2011. Id. ¶¶ 4-5. Peak received the 2010 Purchase Order, issued invoices for the work done pursuant to it, and was paid by Volkswagen in accordance with the invoices. Id. ¶¶ 6-8. The 2010 Purchase Order is three pages in length. Dkt. 51-2, Ex. A. On the bottom half of the first page, it includes the sentence: "This Purchase Order is made only upon and subject to all of the standard terms and conditions found on http://www.vwgroupsupply.com." Id. On the top of the second page, it states: "Please reference supplier document Quote from 10-1-2010 and Minutes from 10-1-2010 outlining scope of service and all related costs." Id. Approximately fifteen lines down on the second page, it also states: "The current version of General Terms and Conditions of Purchase can be found on http://www.vwgroupsupply.com; using the following path: Worldwide presence, VW Group of America, Terms and Conditions, Non-Production Terms and Conditions." Id.

---

[1] To the extent the Court relies on evidence to which there has been an objection, the Court has overruled the objection to that evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

The "Minutes from 10-1-2010" are contained in a separate document. Dkt. 51-2, Ex. B. The second page includes a bulleted list of eight "General agreements discussed w. supplier (mark with 'x')." Id. To the right of the list, there is a column titled "Agreed," and each agreement has been marked with a "x." Id. The seventh bullet states: "[Volkswagen] non production terms and conditions apply. See link below www.vwgroupsupply.com," followed by a longer link. Id. The minutes have a signature line for Peak, which was signed by James R. Myers Jr. Id.

On December 20, 2013, Volkswagen contracted for Peak's services through Purchase Order No. 4500429874 ("2013 Purchase Order"), which covered work to be performed by Peak from January 2014 to 2016. SUF ¶¶ 14-15. Peak received the 2013 Purchase Order, issued invoices for the work done pursuant to it, and was paid by Volkswagen in accordance with the invoices. Id. ¶¶ 16-18. The 2013 Purchase Order is three pages in length. Dkt. 51-4, Ex. C. In the middle of the first page, it states: "In reference to the negotiation meeting minutes dated 12/5/2013 with Kevin Murray, CFO, we entrust / task you with the following service," and then describes the service as "2014-2016 VW TRAC Program." Id. On the bottom half of the first page, as in the 2010 Purchase Order, it includes the sentence: "This Purchase Order is made only upon and subject to all of the standard terms and conditions found on http://www.vwgroupsupply.com." Id. In the middle of the second page, as in the 2010 Purchase Order, it states: "The current version of General Terms and Conditions of Purchase can be found on http://www.vwgroupsupply.com; using the following path: Worldwide presence, VW Group of America, Terms and Conditions, Non-Production Terms and Conditions." Id.

The "meeting minutes dated 12/5/2013" are contained in a separate document. Dkt. 51-5, Ex. D. The second page includes a bulleted list of eight "General agreements discussed w. supplier (mark with 'x')." Id. The seventh bullet states: "[Volkswagen] Non-Production Terms and Conditions terms and conditions apply. www.VWGroupSupply.com. *Select 'Cooperation' -> 'Procurement Conditions' -> 'Volkswagen Group of America.'*" Id. To the right, there is an "x" marked next to the seventh bullet in the column titled "Agreed." Id. The document was signed by Kevin R. Murray ("Murray"), the Chief Financial Officer of Peak, on December 5, 2013. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|----------|------------------------|---|------|------------------|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

### B.    2009 Terms & Conditions

Volkswagen states that the applicable Non-Production Terms and Conditions ("2009 Terms & Conditions") were published to www.vwgroupsupply.com in May 2009, relying on images of its website from the Wayback Machine dated June 19, 2009, February 28, 2010, September 19, 2011, and October 31, 2011. SUF ¶ 25. The images were retrieved by plaintiff's counsel, without using a login, by following the "path" in the 2010 Purchase Order. Dkt. 51-7 ¶ 6. The images show a website page, with a sub-heading titled "Non-Production Terms and Conditions." Dkt. 51-12, Ex. J. Below the sub-heading, a document titled "Non-Production Terms and Conditions" is listed, followed by the text "published at May 15, 2009 | English." Id. To the right of this text, there appears to be a hyperlink with the word "download." Id. However, Thomas Dolliver ("Dolliver"), Volkswagen's corporate witness, testified that he was "told" that "when you click the [download] button, it wasn't opening the document." Dkt. 57-3, Ex. W at 107. It appears that defense counsel also stipulated to the fact that "you can't click the 'Download' button on this Wayback Machine page." Id. Stan Megerdichian ("Megerdichian"), one of Peak's principals, testified that "I don't think we went there," in response to whether anyone at Peak, upon receipt of the 2010 Purchase Order, tried to find the 2009 Terms & Conditions on Volkswagen's website. Dkt. 57-3, Ex. U at 53-54.

Volkswagen states that the 2009 Terms & Conditions were publicly available, without the need for a login, since they were published on the website in May 2009 until they were replaced in September 2014. SUF ¶ 26. Volkswagen therefore asserts that they were publicly available when the 2010 and 2013 Purchase Orders were signed, relying on a declaration from employee Erik Ehinger ("Ehinger"), who "use[d] and direct[ed] potential suppliers to www.vwgroupsupply.com to view any applicable terms and conditions" as part of his roles at Volkswagen from July 2009 to the present. Id. ¶¶ 27-28. Volkswagen states that Peak never objected to them, while Peak responds that it could not object to them because it was unaware of their existence. Id. ¶ 29.

It is undisputed that the 2009 Terms & Conditions are governed by Michigan law and that they are applicable to all purchase orders between Volkswagen and a supplier. Id. ¶¶ 32-33. The 2009 Terms & Conditions provide, under paragraph 7.2.1, that the supplier "will comply with all applicable laws." Dkt. 51-14, Ex. K at 12. Further, paragraph 8 of the 2009 Terms & Conditions states, in pertinent part:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|---|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

**8 Indemnification**

8.1 Indemnification by Supplier.  Supplier will, at its expense, indemnify, defend and hold harmless [Volkswagen] and its Affiliates, and their respective Personnel, successors and assigns (each a "[Volkswagen] Indemnitee"), from and against all damages, losses, claims, liabilities and expenses (including reasonable attorneys' and other professional fees, settlements and judgments (collectively "Losses") claimed by any Third Person in any claim, demand, suit, or proceeding in connection with any of the following:

8.1.1 The breach or misrepresentation by Supplier of its obligations or warranties to [Volkswagen] under these Terms or an Order;

8.1.2 The death or bodily or personal injury of, or other legally enforceable damage incurred by, any agent, employee, customer, business invitee, or business visitor or other person caused by the breach of contract, breach of warranty, gross negligence, intentional or willful misconduct, errors or omissions of Supplier or its Personnel, agents or Subcontractors;

Id. at 13.

### C.    The Trenz Action

On October 26, 2015, Brian Trenz filed a complaint against Volkswagen and Peak in the United States District Court for the Central District of California, Brian Trenz v. On-Line Administrators, Inc. et al. Case 2-15-cv-08356-AB-KS (the "Trenz action"). SUF ¶ 36.  The operative Trenz complaint alleged that Peak and Volkswagen negligently and willfully violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Id. ¶ 39.  It consisted of two classes: the first covering customers called from October 26, 2011 to October 15, 2013, led by plaintiffs Brian Trenz ("Trenz") and Francis Breidenbach ("Breidenbach"), and the second covering customers called on or after October 16, 2023, led by plaintiffs Caitlyn Farrell and Noelle Simms.  Id. ¶¶ 40-42.

On July 29, 2016, Volkswagen requested in writing that Peak provide indemnification and defense for the Trenz action.  Id. ¶ 43.  Peak refused to do so.  Id. ¶ 44.  The Trenz plaintiffs sought up to $500 from Volkswagen for each negligent violation of 47 U.S.C. § 227(b)(1) and $1,500 for each and every violation of 47 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|---|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

227(b)(1), and alleged that at least 1,290,000 calls were made by Peak at Volkswagen's direction. Id. ¶¶ 45-46. The Trenz litigation was extensively litigated. Id. ¶ 47. On September 25, 2017, the Court entered summary judgment against plaintiff Breidenbach, finding that he consented to being contacted by Peak, but denied summary judgment as to plaintiff Trenz's claims, finding that he did not provide such consent. Id. ¶¶ 48-49. Thereafter, on August 10, 2020, the Court reconsidered the latter ruling, found that plaintiff Trenz also consented to being contacted, dismissed his claims on summary judgment, and decertified his class. Id. ¶ 50. On March 25, 2022, plaintiffs Caitlyn Farrell and Noelle Simms voluntarily dismissed the claims of their class without prejudice. Id. ¶ 51. On April 22, 2022, plaintiff Trenz filed an appeal of the summary judgment ruling against him. Id. ¶ 52.

On April 11, 2022, Volkswagen requested that Peak pay for the Trenz settlement. Id. ¶ 53. Peak denied this request. Id. ¶ 54. On May 19, 2022, Volkswagen and plaintiff Trenz entered into a release and settlement agreement whereby Volkswagen agreed to pay $275,000 to Trenz and his attorneys in exchange for dismissal with prejudice of the claims pending on appeal. Id. ¶ 55. Volkswagen incurred $2,245,305.62 in legal fees and expenses defending the Trenz action and $275,000 in settlement costs. Id. ¶¶ 59-60.

### D.    Acquisitions

In August 2016, On-Line Administrators, Inc. dba Peak was converted to On-Line Administrators, LLC ("OLA"). Id. ¶ 56. The parties dispute whether, in August 2016, Affinitiv acquired OLA. Id. ¶ 57. Volkswagen maintains that Affinitiv acquired OLA, while defendants allege that CIP Revolutions Holdings, LLC acquired Peak. Id. The parties agree that OLA has the same principal address, mailing address, and officers/managers as Affinitiv. Id. ¶ 58.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

IV.    DISCUSSION

Volkswagen moves for partial summary judgment as to its claims for (1) breach of contract, (2) express contractual indemnity, and (3) declaratory relief.[2] MSJ at 9. In the alternative, Volkswagen moves for partial summary judgment on eleven specific issues. Id. The Court addresses each issue in turn.

---

[2] Volkswagen notes that, if its motion is granted, the only remaining issues would be Volkswagen's claim for equitable indemnity and the amount of damages. MSJ at 9, n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

### A.    Breach of Contract

#### 1.    Application of the 2009 Terms & Conditions

Volkswagen argues that summary judgment should be granted as to its breach of contract claim because there is no genuine dispute of material fact as to whether the 2010 and 2013 Purchase Orders are valid contracts for services between Volkswagen and Peak. MSJ at 15.  Volkswagen asserts that the Purchase Orders are of a proper subject matter; Peak received and accepted them and issued invoices for the work done; and Volkswagen paid them. Id. at 15-16.  Next, Volkswagen contends that the 2009 Terms & Conditions apply to the Purchase Orders, as both clearly state that they were made "only upon and subject to all of the standard terms and conditions found on http://www.vwgroupsupply.com." Id. at 16.  Volkswagen further contends that both Purchase Orders list a "file path" whereby the current version of the Terms & Conditions could be found, and the signed "meeting minutes" for both Purchase Orders specifically identify that their application was discussed with Peak.  Id.  According to Volkswagen, the 2009 Terms & Conditions were accessible on the website, Peak never objected to them, and Peak's failure to view them does not impact their application. Id. at 16-17.

In opposition, defendants argue that there are disputes of material fact as to whether the 2009 Terms & Conditions apply to Peak.  Opp. at 2.  Defendants contend that in order for the 2009 Terms & Conditions to have been incorporated by reference into the 2010 and 2013 Purchase Orders, the reference must be (1) clear and unequivocal, (2) called to the attention of the other party, resulting in the other party's consent, and (3) the terms must be known or easily available to the contracting parties.  Id.  Defendants argue that there are factual disputes regarding each of these elements.  Id. at 3.  Defendants contend that the reference at the bottom of the first page is in "small writing," and does not name specific standards or a specific website.  Id.  Defendants further assert that the reference on the second page is "buried in fine print."  Id.  Defendants argue that the sentence lacks clarity, as there are two sets of terms referenced ("General" and "Non-Production"), and the actual terms relied upon by Volkswagen have an altogether different title.  Id.  Defendants contend that Peak's principals, Megerdichian and Murray, did not know the 2009 Terms & Conditions existed, never saw them, did not understand that they were in the contract, needed a login to access them on Volkswagen's website, and even when given a login, could not locate them.  Id. at 3-4.  Rather, according to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|---|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

Peak, Megerdichian and Murray were aware of a *different* set of terms, which did not
contain an indemnity clause.  Id. at 4.

Defendants next argue that there are factual disputes regarding whether the 2009
Terms & Conditions were easily available to Peak.[3]  Id. at 6.  Defendants assert that even
if Volkswagen's evidence were admissible, it only shows that the Purchase Orders
directed Peak to a general website with a path of different webpages.  Id. at 7.
Additionally, defendants contend that Peak's own evidence—the testimony of
Megerdichian and Murray and the parties' history of contracting from 2007 and 2008—
shows that the 2009 Terms & Conditions were not easily available to Peak.  Id. at 8.

Furthermore, defendants argue that Volkswagen's evidence is inadmissible and
fails to establish that the 2009 Terms & Conditions were on the website.  Id.  First,
defendants dispute Volkswagen's reliance on the Wayback Machine.  Id.  Defendants
contend that Volkswagen's Wayback Machine images do not describe the "path" taken to
get there, do not provide evidence that the "path" would have worked in 2010 or 2013,
and do not show the 2009 Terms & Conditions.  Id. at 10.  Rather, according to
defendants, Volkswagen's Wayback Machine images show a list of "what might have
been" hyperlinks, without evidence that they actually led to the 2009 Terms &
Conditions.  Id.  Defendants next argue that the declarations of Dolliver and Ehinger,
relied upon by Volkswagen to prove that the 2009 Terms & Conditions were publicly
available, lack foundation, as neither witness states that he worked on the website, and
Dolliver's deposition confirmed that they did not have knowledge of the specific website
locations in 2010 or 2013.  Id.

In reply, Volkswagen argues that the authority relied upon by defendants is
inapplicable, as it does not apply Michigan law.  Reply at 7.  Volkswagen asserts that
Michigan does not require California's three-step rule for incorporation by reference.  Id.
Volkswagen argues that Peak does not dispute that it never tried to review the 2009
Terms & Conditions upon receipt of the 2010 Purchase Order.  Id. at 8.  Volkswagen
contends that courts applying Michigan law, and courts elsewhere, have held that terms

---

[3] Defendants also dispute Volkswagen's reliance on the 2010 and 2013 meeting minutes,
arguing that neither Megerdichian nor Murray were involved in the meetings.  Opp. at 4,
10-11.  Because the Court does not rely on the meeting minutes in reaching its
conclusions, it does not address this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

and conditions found on a website can be incorporated by reference. Id. Additionally, Volkswagen disputes that the file path was "buried in fine print," as it was in the same font size as other text. Id. at 10. Volkswagen asserts that the reference to the 2009 Terms & Conditions in the Purchase Orders is above bolded text stating "Supplier Acknowledgement," which required Peak to acknowledge their application. Id. According to Volkswagen, defendants' arguments about 2007 and 2008 are irrelevant, because the Trenz action was *only* covered by the 2010 and 2013 Purchase Orders. Id. at 11.

Next, Volkswagen argues that defendants fail to dispute that the 2009 Terms & Conditions were publicly available without the need for a login during the relevant time. Id. Volkswagen contends that the Ehinger and Dolliver declarations are admissible. Id. at 12. According to Volkswagen, Ehinger's declaration lays a foundation because it outlines that as part of his role as a Senior Buyer (2009 to 2013) and in Purchasing (2013-2014), he interacted with the website, and Dolliver's declaration repeats his testimony as Volkswagen's corporate witness. Id. Next, Volkswagen argues that the Wayback Machine images are admissible and show that there was a pdf available to download titled "Non-Production Terms and Conditions," published on May 15, 2009. Id.

As an initial matter, the Court addresses the parties' apparent dispute over the governing law of this action. It is undisputed that Michigan law governs the 2009 Terms & Conditions. SUF ¶ 31. However, because defendants argue that the 2009 Terms & Conditions were not incorporated into the 2010 and 2013 Purchase Orders, it appears that defendants maintain that California law applies to the question of whether the 2009 Terms & Conditions apply. Opp. at 2 (citing cases applying California law). The Purchase Orders themselves do not contain a choice-of-law provision. Under California law, the party seeking to invoke the law of a jurisdiction other than California bears the burden of proof on the choice-of-law issue. Zinser v. Accufix Rsch. Inst., Inc., 253 F.3d 1180, 1187 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). Here, Volkswagen did not make this showing, other than noting that defendants acknowledged that Michigan law governs the 2009 Terms & Conditions. Accordingly, the Court applies California law to analyze the threshold question of whether the 2009 Terms & Conditions were incorporated into the 2010 and 2013 Purchase Orders.

Under California law, "[a] contract may incorporate documents and terms by reference. Where it is clear that a party is assenting to a contract that incorporates other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

documents by reference, the incorporation is valid—and the terms of the incorporated
document are binding—so long as the incorporation is clear and unequivocal, the
reference [is] called to the attention of the other party and he [ ] consent[s] thereto, and
the terms of the incorporated document [are] known or easily available to the contracting
parties." In re Holl, 925 F.3d 1076, 1084 (9th Cir. 2019) (citations and quotations
omitted).  In Shaw, when the defendant asserted that it did not intend to incorporate the
policy at issue into a contract, the California Court of Appeal was "unconvinced," as "the
relevant intent is objective—that is, the objective intent as evidenced by the words of the
instrument, not a party's subjective intent."  Shaw v. Regents of Univ. of California, 58
Cal. App. 4th 44, 54–55 (1997).  The fact that a plaintiff was not subjectively aware of
terms incorporated by reference does not prevent their enforceability, as long as the terms
were "easily available" to it.  Wolschlager v. Fid. Nat'l Title Ins. Co., 111 Cal. App. 4th
784, 791 (2003), as modified (Aug. 27, 2003).

    The Court finds that, on this record, it is undisputed that the reference to the 2009
Terms & Conditions was "clear and unequivocal," called to Peak's attention, and
consented to by Peak.  Both Purchase Orders state the following on the first page: "This
Purchase Order is made only upon and subject to all of the standard terms and conditions
found on http://www.vwgroupsupply.com."  This sentence appears directly above the
bolded words "**Supplier Acknowledgement**: Complete & Return Promptly," followed
by the text: "The above numbered order is acknowledged and accepted subject to the
terms and conditions thereon."  Furthermore, the second page of the Purchase Orders
states: "The current version of General Terms and Conditions of Purchase can be found
on http://www.vwgroupsupply.com; using the following path: Worldwide presence, VW
Group of America, Terms and Conditions, Non-Production Terms and Conditions."
None of these statements are buried in fine print, and the contracts are only three pages in
length.  The Court therefore finds that it is clear and unequivocal that the 2009 Terms &
Conditions were incorporated into the Purchase Orders.  See Koffler Elec. Mech.
Apparatus Repair, Inc. v. Wartsila N. Am., Inc., No. C-11-0052 EMC, 2011 WL
1086035, at *4 (N.D. Cal. Mar. 24, 2011) (finding that reference was clear and
unequivocal when page three of the purchase order stated: "ALL SUPPLIES OF GOOD
AND/OR SERVICES ARE SUBJECT TO THE WÄRTSILÄ NORTH AMERICA, INC.
GENERAL TERMS AND CONDITIONS USA—PURCHASE ORDERS (2007).").

    Furthermore, it is undisputed that Peak received these Purchase Orders, issued
invoices for them, and was paid by Volkswagen in accordance with the invoices.  Thus,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

the reference to the 2009 Terms & Conditions was brought to Peak's attention and consented to by Peak. See Koffler, 2011 WL 1086035, at *4 ("Moreover, by agreeing to the purchase order which effectively incorporated the General Terms and Conditions, [the plaintiff] consented to it."). Additionally, the Court finds that there are no genuine disputes of material fact as to whether the 2009 Terms & Conditions were "easily available" to Peak. The second page of the Purchase Orders identified the 2009 Terms & Conditions as "Non-Production Terms and Conditions" and directed Peak as to where it could find them on Volkswagen's website. Archival images of the website from 2010 and 2013, when the Purchase Orders were received, show that a document titled "Non-Production Terms and Conditions" was purportedly available for download.[4] It is irrelevant that Peak's principals did not look for the 2009 Terms & Conditions when they accepted the Purchase Orders or subjectively know that they existed. See Wolschlager, 111 Cal. App. 4th at 791 ("[E]ven if plaintiff did not know about the arbitration clause, the Policy with the clause was easily available to him. The preliminary report identified the Policy by name and directed the plaintiff to where he could inspect it. Nothing further was needed to bind the plaintiff."). Accordingly, the Court finds that there is no genuine dispute as to whether all three elements for incorporation by reference were satisfied, and the 2009 Terms & Conditions were therefore incorporated into the 2010 and 2013 Purchase Orders.

2.    Interpretation of the 2009 Terms & Conditions

Volkswagen argues that the indemnification provision in the 2009 Terms & Conditions is not ambiguous. Id. at 18. Volkswagen contends that the terms "all" and "any" denote a broad obligation to indemnify, and the word "claim" does not require a finding of breach before the obligation may be triggered. Id. Volkswagen therefore asserts that the duties to defend and indemnify arise when a claim is made in connection with Peak's breach, regardless of whether there was an actual breach or whether it was merely alleged. Id. Further, Volkswagen contends that the provision does not require the "losses" to be "caused by" Peak; rather, the losses merely have to be "in connection with"

_____

[4] The Court takes judicial notice of Volkswagen's Wayback Machine images. "Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]" Erickson v. Nebraska Mach. Co., No. 15-cv-01147-JD, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

Peak's alleged breach. <u>Id.</u> at 18-19.  According to Volkswagen, any other interpretation
would render other provisions meaningless and be unreasonable. <u>Id.</u> at 19.  Volkswagen
also argues that in the 2009 Terms & Conditions, Peak represented and warranted to
Volkswagen that it would "comply with all applicable laws." <u>Id.</u>  Because the indemnity
provision required Peak to indemnify and defend Volkswagen for alleged claims of
breach, and the <u>Trenz</u> complaint alleged that Peak and Volkswagen failed to comply with
the law (i.e., that they violated the TCPA), Volkswagen asserts that Peak was required to
defend and indemnify Volkswagen. <u>Id.</u> at 20.  As Peak denied Volkswagen's demand,
Volkswagen argues that it was damaged by incurring $2.2 million in attorneys' fees,
costs, and expenses, as well as $275,000 in settlement costs. <u>Id.</u>

In opposition, defendants argue that summary judgment must be denied because
defendants' interpretation of the indemnification clause, which flows from it having two
separate parts, is plausible.  Opp. at 11-12.  According to defendants, the first part
identifies what is covered by the obligation, while the second part identifies when the
obligation is triggered. <u>Id.</u> at 12-13.  Defendants therefore argue that if Peak did not
actually breach its obligations, no defense or indemnification obligation would arise, as
"[t]he breach" means an actual breach. <u>Id.</u>  Defendants contend that their interpretation is
supported by subsequent parts of the provision. <u>Id.</u>  While Section 8.1.1. is confined to
claims "in connection with… the breach," sections 8.1.4 and 8.2.1 trigger a defense and
indemnification obligation when the claim is in connection with a mere allegation. <u>Id.</u>
Defendants dispute Volkswagen's argument that this interpretation would render Peak's
obligations "meaningless." <u>Id.</u> at 14.  Rather, defendants argue that their interpretation
gave Peak a choice: choose to pick up the defense of a third-party claim at the outset, or
choose not to defend, and if later found to have been in breach, Volkswagen would have
a right of recovery against Peak. <u>Id.</u>  Defendants assert that the duty to defend in the non-
insurance context is narrow, because the indemnitor has not received premiums. <u>Id.</u>

Next, defendants contend that under Michigan law, defense and indemnification
clauses in non-insurance contexts are construed against the drafter and the indemnitee,
both of which are Volkswagen. <u>Id.</u> at 16 (citing <u>Raymond v. Bowers</u>, No. 228201, 2002
WL 1308782, at *1 (Mich. Ct. App. June 11, 2002)).  Defendants then argue that
extrinsic evidence supports their interpretation. <u>Id.</u> at 17.  Specifically, defendants assert
that the demand letter from Volkswagen from when the <u>Trenz</u> action was first filed
contemplates an actual breach by Peak. <u>Id.</u>  Additionally, defendants argue that
Volkswagen could not identify a single other instance where it sought defense and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

indemnity when it was undisputed that the supplier did not breach. <u>Id.</u> at 18. Finally, defendants argue that the overall context of the parties' agreement supports Peak, because Peak is not an insurance company, and it would "make[] no sense" for Peak to "agree to defend and indemnify… if the parties got sued for Peak doing exactly as [Volkswagen] asked." <u>Id.</u> at 19.

In reply, Volkswagen argues that the indemnity provision is unambiguous. Reply at 14. Volkswagen also argues that the sections of the provision must be taken as a whole. <u>Id.</u> Volkswagen then contends that the fact that Peak provided an alternative meaning does not make the provision ambiguous. <u>Id.</u> at 15. Volkswagen next argues that the extrinsic evidence offered by defendants should be ignored because (i) the provision is not ambiguous, and (ii) the evidence is irrelevant. <u>Id.</u> at 16-17. Specifically, Volkswagen states that its conduct with other suppliers is irrelevant, because there are various business reasons why Volkswagen would not seek indemnification in other cases. <u>Id.</u> at 17. Volkswagen argues that because Peak provided it a service, it makes "perfect sense" for Peak to indemnify and defend for claims made regarding that service. <u>Id.</u> Lastly, Volkswagen asserts that defendants wrongly argue that the clause should be construed against the drafter and indemnitee, because that rule is only used (i) upon a finding of ambiguity, and (ii) if all other means of contract interpretation have failed. <u>Id.</u>

Having found that the 2009 Terms & Conditions are part of the contracts, the Court finds that Michigan law governs their interpretation, pursuant to their choice-of-law provision. Under Michigan law, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." <u>Kloian v. Domino's Pizza L.L.C.</u>, 273 Mich. App. 449, 454 (2006) (citations and quotations omitted). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate. In light of this cardinal rule, and to effectuate the principle of freedom of contract, this Court has generally observed that '[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity.' 'However, we will not create ambiguity where the terms of the contract are clear.'" <u>City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool</u>, 473 Mich. 188, 197–98 (2005) (citations omitted). "Where there is no ambiguity, we will enforce the terms of the contract as written." <u>Frankenmuth Mut. Ins. Co. v. Masters</u>, 460 Mich. 105, 111 (1999). "An indemnity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

contract is construed in accordance with the rules for the construction of contracts in general." <u>Raymond</u>, 2002 WL 1308782, at *1.

The Court finds that the contract language is unambiguous.[5]  It states: "Supplier will, at its expense, indemnify, defend and hold harmless [Volkswagen]… from and against all damages [and] claims… claimed by any Third Person in any claim [or] suit… in connection with… [t]he breach or misrepresentation by Supplier of its obligations or warranties to [Volkswagen] under these Terms or an Order."  Dkt. 51-14, Ex. K at 13. The plain meaning of the word "claim" is "[a] statement that something yet to be proved is true."  Black's Law Dictionary (12th ed. 2024).  While the provision does not explicitly discuss claims involving "alleged" breaches, the word "claim" inherently implies that there is no need for a finding or judgment of breach before the indemnification obligation may be triggered.  Because the language of the provision is unambiguous, the Court will not engage in contract interpretation or look to extrinsic evidence.  <u>See</u> <u>Raymond</u>, 2002 WL 1308782, at *1 (The Court "may not make a different contract for the parties or look to extrinsic evidence to determine their intent when the words comprising the contract are clear and unambiguous and have a definite meaning.").  Accordingly, the Court finds that, as a matter of law, the provision required Peak to defend and indemnify Volkswagen in any claim or suit in connection with a breach or misrepresentation, regardless of whether the breach or misrepresentation is proven or merely alleged.

       3.    <u>Breach of Contract</u>

Having found that the 2009 Terms & Conditions were incorporated into the 2010 and 2013 Purchase Orders and required defense and indemnity against any claims of breach or misrepresentation, the Court proceeds to analyze Volkswagen's breach of contract claim.  To prevail on a breach of contract claim, a plaintiff must establish "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach."  <u>Bank of Am., NA v. First Am. Title Ins. Co.</u>, 499 Mich. 74, 100 (2016).  As for the first element, it is undisputed that the Purchase Orders were contracts between the parties, and the Court has found that these contracts

---

[5] Defendants argue that, to the extent that there is an ambiguity in the contract, it should be construed against the drafter and indemnitee: Volkswagen.  <u>See</u> <u>Raymond</u>, 2002 WL 1308782, at *1.  While that proposition may be correct, the Court finds that the contract language is unambiguous and therefore does not reach this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|----------|----------------------|------|------------------|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

incorporated the 2009 Terms & Conditions as a matter of law.  SUF ¶¶ 4, 14.  As for the
second element, the Court has found as a matter of law that the 2009 Terms & Conditions
required Peak to defend and indemnify Volkswagen in any claim or suit in connection
with a "breach or misrepresentation by Peak of its obligations or warranties to
[Volkswagen] under [the 2009 Terms & Conditions]," including alleged breaches.
Further, it is undisputed that the Trenz action was a claim or suit in connection with
Peak's alleged breach of its warranties and obligations to Volkswagen—specifically, its
representation and warranty that it would comply with all applicable laws, including the
TCPA.  SUF ¶¶ 35, 39.  Additionally, it is undisputed that Peak refused to defend and
indemnify Volkswagen in the Trenz action, see id. ¶ 44, thereby breaching the contract.
As for the third element, the Court finds that it is undisputed that Volkswagen was
damaged by Peak's breach, as Volkswagen incurred attorneys' fees, costs, and expenses,
as well as settlement costs in the Trenz action.  Id. ¶¶ 59-60.  Accordingly, the Court
finds that Volkswagen is entitled to summary judgment on its breach of contract claim
against Peak, though the amount of damages remains a triable issue.

### B.    Express Contractual Indemnity

Volkswagen argues that its express contractual indemnity claim involves no
genuine disputes of material fact.  MSJ at 20.  Volkswagen relies on Grand Trunk to
assert that, when an indemnitor had notice of a claim and refused to defend, the
indemnified party "need show only potential liability" to recover, which means that the
indemnitee "acted reasonably in settling the underlying suit."  Id. at 21 (citing Grand
Trunk W. R.R. v. Auto Warehousing Co., 262 Mich. App. 345, 355-56 (2004)).
Volkswagen argues that here, because Volkswagen tendered the Trenz claim to Peak in
2016 and Peak refused it, the "potential liability" rule was triggered, and Volkswagen is
therefore entitled to indemnity if (1) the facts of the claim "were covered by the contract
of indemnity" and (2) Volkswagen "acted reasonably in settling the underlying suit."  Id.
Volkswagen asserts that the facts of Trenz were covered by the indemnity clause because
they involved the calls that Peak was hired to place, as well as Peak's representation and
warranty that it would comply with the law.  Id. at 22.  Further, Volkswagen argues that it
acted reasonably in settling the Trenz action because after significant litigation, it
resolved the remaining appellate issues in a "very conservative settlement."  Id.

In opposition, defendants argue that there are material disputes about whether
Grand Trunk and the potential liability rule apply.  Opp. at 19.  First, defendants contend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

that the underlying claim in <u>Grand Trunk</u> was "clearly within the scope" of the indemnity provision, unlike the provision here. <u>Id.</u> at 20. Second, defendants argue that the premise of <u>Grand Trunk</u> was that the indemnity provision had already been triggered, whereas here, there is at least a material dispute about whether the indemnity obligation was triggered. <u>Id.</u> Third, even if the potential liability rule applied, defendants contend that there are material disputes about whether Volkswagen's decision to settle was reasonable, given that Volkswagen faced no liability after two of the four underlying plaintiffs dismissed their claims and the other two lost on summary judgment. <u>Id.</u> at 21.

In reply, Volkswagen argues that if the Court rules in its favor on the triggering of the indemnity obligation, the Court can also decide that the potential liability rule applies. Reply at 18. Volkswagen disputes defendants' assertion that it faced "no liability" in the <u>Trenz</u> action, as Volkswagen could have lost on appeal. <u>Id.</u> Volkswagen states that the settlement was reasonable because defendants do not dispute that there was significant litigation, the amount in controversy, or the remaining appellate issues. <u>Id.</u> at 19.

Having determined that the indemnity provision of the 2009 Terms & Conditions was triggered by the filing of the <u>Trenz</u> action, the Court finds that <u>Grand Trunk's</u> potential liability rule applies here. "[I]f an indemnitee settles a claim against it before seeking the approval of, or tendering the defense to, the indemnitor, then the indemnitee must prove its actual liability to the claimant to recover from the indemnitor. However, the indemnitee who has settled a claim need show only *potential* liability if the indemnitor had notice of the claim and refused to defend." <u>Grand Trunk</u>, 262 Mich. App. at 354–55 (citations omitted). It is undisputed that Peak, the indemnitor, had notice of the claim in <u>Trenz</u> and refused to defend. SUF ¶¶ 44, 53-54. Further, it is undisputed that the indemnitee, Volkswagen, settled the claim. <u>Id.</u> ¶ 60.

"To recover under these circumstances the indemnitee must show that the fact situation of the original claim is covered by the contract of indemnity and that the settlement is reasonable. Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components, which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

factors, the indemnitee will have cleared this hurdle." Grand Trunk, 262 Mich. App. at 355-56 (citing Trim v. Clark Equip. Co., 87 Mich. App. 270, 277-78 (1978)).

The Court finds that the facts in the Trenz claim were covered by the indemnity provision in the 2009 Terms & Conditions, because the Trenz plaintiffs alleged that Peak did not comply with "all applicable laws." See Section IV(A)(3). Further, the Court finds that there is no genuine dispute about whether Volkswagen acted reasonably in settling the Trenz action. It is undisputed that the Trenz plaintiffs alleged that at least 1,290,000 calls were made by Peak at Volkswagen's direction, including 490,000 calls made during the period covered by plaintiff Trenz's class. SUF ¶ 46. It is also undisputed that the Trenz plaintiffs sought penalties of up to $1,500 per violation. Id. ¶ 45. Thus, accounting only for calls and violations alleged in plaintiff Trenz's class—as his claim was the only one appealed and settled—Volkswagen faced a potential exposure of $735,000,000 if Trenz prevailed on appeal and later at trial. Even assuming plaintiff Trenz's likelihood of prevailing was low, Volkswagen settled for less than 0.04% of its potential exposure amount, at $275,000. The Court therefore finds that no reasonable jury could find that Volkswagen acted unreasonably in settling this matter. See Henry Ford Health Sys. v. Act-1 Grp., Inc., No. 305849, 2013 WL 951126, at *3 (Mich. Ct. App. Feb. 21, 2013) (affirming trial court's granting of summary judgment pursuant to Grand Trunk and finding that underlying settlement was reasonable when plaintiff "settled for less than what [the underlying plaintiff] was seeking… [and] [d]efendants offered no evidence that the amount of damages would have been reduced at trial").

Having established the absence of any genuine dispute over whether (1) an enforceable contract of indemnity existed, (2) a seasonable tender of defense was made with notice that a settlement will be entered, (3) the tender of defense was refused, and (4) potential liability, see Grand Trunk, 262 Mich. App. at 355, the Court finds that Volkswagen is entitled to judgment as a matter of law on its express contractual indemnity claim.

**C.   Declaratory Relief**

Volkswagen seeks summary judgment as to its declaratory relief claim, arguing that an actual controversy exists and that the Court can determine as a matter of law that Peak breached its 2010 and 2013 Purchase Orders due to Peak's failure to indemnify and defend Volkswagen in the Trenz action. MSJ at 23. Defendants do not appear to address this claim in their opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | Date | January 27, 2025 |
|----------|----------------------|------|------------------|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | |

At oral argument, Volkswagen stated that if the Court found Peak liable to Volkswagen for breach of contract and express contractual indemnity, there would no longer be an ongoing controversy between Volkswagen and Peak or between Volkswagen and OLA. As such, in light of the Court's rulings herein, the Court finds that declaratory relief against Peak and OLA is no longer an appropriate remedy. However, given the Court's denial of summary judgment as to Volkswagen's claims against Affinitiv, see Part IV(D), the Court reserves judgment on Volkswagen's declaratory relief claim against Affinitiv.

### D. Eleven Issues

Alternatively, Volkswagen argues that it is entitled to summary judgment on the following eleven issues, for which no genuine dispute of material fact exists:

1) The 2010 Purchase Order constitutes a written contract for services between Volkswagen and Peak;
2) The 2009 Terms & Conditions apply to the 2010 Purchase Order;
3) The 2013 Purchase Order constitutes a written contract for services between Volkswagen and Peak;
4) The 2009 Terms & Conditions apply to the 2013 Purchase Order;
5) The indemnification provision in the 2009 Terms & Conditions unambiguously requires a supplier to indemnify, defend, and hold harmless Volkswagen and its affiliates for alleged claims of a breach by a supplier (as opposed to the existence of an actual breach by a supplier);
6) Volkswagen has established the "potential liability" necessary to recover on a contract of indemnity;
7) Peak was required to defend Volkswagen in the Trenz action;
8) Peak was required to indemnify Volkswagen in the Trenz action;
9) Because of Peak's failure to defend Volkswagen in the Trenz action, Volkswagen was damaged by incurring fees and costs to defend the Trenz action;
10) Because of Peak's failure to indemnify Volkswagen in the Trenz action, Volkswagen was damaged by incurring the cost of settling the Trenz action;
11) Affinitiv and OLA are jointly and severally liable with Peak for all damages suffered by and relief requested by Volkswagen.

MSJ at 23-25. Specifically as to the eleventh issue, Volkswagen contends that Peak was converted to OLA, which was then acquired by Affinitiv in August 2016. Id. at 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|---|---|---|---|---|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

Volkswagen asserts that because OLA has the same principal address, mailing address, and manager(s) or member(s) as Affinitiv, there is continuity of enterprise between them, and thus Affinitiv and OLA are successors-in-interest to Peak.  Id.

In opposition, defendants argue that Volkswagen falsely states that Affinitiv is liable.  Opp. at 21.  Rather, defendants contend that Affinitiv did not acquire Peak and there is no evidence that Affinitiv is its successor, as Volkswagen concedes that Peak (now OLA) still exists.  Id.

In reply, Volkswagen argues that defendants do not dispute that OLA has the same principal address, mailing address, and manager(s) or member(s) as Affinitiv.  Reply at 19.  Further, Volkswagen states that Megerdichian, defendants' Rule 30(b)(6) deponent, testified that Affinitiv acquired OLA, and that they are therefore jointly and severally liable.  Id. at 20.  According to Volkswagen, defendants do not dispute the first, third, and ninth issues above or that OLA is jointly and severally liable.  Id.

The Court does not address the first ten issues, as they are addressed in the analysis of Volkswagen's breach of contract, express contractual indemnity, and declaratory relief claims.  See Part IV(A)-(C).  As for the eleventh issue, it appears that the parties agree that Peak was converted to OLA in August 2016.  See SUF ¶ 56.  At oral argument, defendants conceded that if Peak is liable to Volkswagen, OLA is also liable to Volkswagen.  The Court therefore finds that, in light of its findings in Part IV(A)-(B), OLA is liable to Volkswagen for breach of contract and express contractual indemnity. However, the Court finds that there is a genuine dispute of material fact regarding the current ownership of Peak.  Volkswagen argues that Peak was acquired by Affinitiv, while defendants assert that, in July 2016, Peak was acquired by CIP Revolutions Holdings, LLC as a subsidiary.  Dkt. 57-3, Ex. AC.  Defendants contend that the agreement by which Peak was acquired does not mention Affinitiv.  Dkt. 57-2 ¶ 15.

"The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations."  Foster v. Cone-Blanchard Mach. Co., 460 Mich. 696, 702 (1999).  The Court therefore cannot determine this issue until the parties submit full and complete documentation regarding any changes in Peak's ownership since the 2010 and 2013 Purchase Orders.  The Court orders the parties to submit a joint status report, no later than February 4, 2025, addressing what documents must be produced and reviewed to determine the successor liability issue as to Affinitiv.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-06599-CAS-JCx | | Date | January 27, 2025 |
|----------|----------------------|--|------|------------------|
| Title | Volkswagen Group of America, Inc. v. On-Line Administrators, Inc. et al. | | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Volkswagen's motion for summary judgment. The Court **GRANTS** Volkswagen's motion as to its breach of contract and express contractual indemnity claims against Peak and OLA. The Court **DENIES** Volkswagen's motion as to its successor liability claim against Affinitiv without prejudice. The Court **RESERVES JUDGMENT** on Volkswagen's declaratory relief claim against Affinitiv. The Court orders the parties to submit a joint status report, no later than February 4, 2025, addressing what documents must be produced and reviewed to determine the successor liability issue as to Affinitiv.

IT IS SO ORDERED.

|  | 00 | : | 30 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |