O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., | No. 2:23-cv-06599-CAS-JCx |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| — v. — | |
| ON-LINE ADMINISTRATORS, INC., DBA PEAK PERFORMANCE MARKETING SOLUTIONS; ON-LINE ADMINISTRATORS, LLC; AFFINITIV, INC., | |
| Defendants. | |

## I.    INTRODUCTION

On August 11, 2023, plaintiff Volkswagen Group of America, Inc. ("Volkswagen") filed suit against defendants On-Line Administrators, Inc. dba Peak Performance Marketing Solutions, On-Line Administrators, LLC, and Affinitiv, Inc. (collectively "defendants") in this Court.  Dkt. 1 ("Compl.").  Plaintiff brings claims for: (1) express contractual indemnity; (2) equitable indemnity; (3) declaratory relief; and (4) breach of contract, arguing that defendants were obligated to indemnify plaintiff in a third-party lawsuit that was filed against both parties, <u>Brian Trenz v. On-Line Administrators, Inc. et al</u>. Case No. 2-15-cv-08356-AB-KS (the "<u>Trenz</u> action" ).  <u>Id.</u>

1

On October 12, 2023, defendants filed a motion to dismiss. Dkt. 14. On November 15, 2023, the Court denied defendants' motion as to plaintiff's four claims, but granted defendants' motion as to plaintiff's prayer for an award of attorneys' fees. Dkt. 22. The Court determined that there was no contractual or statutory basis for an award of attorneys' fees in this action, as distinguished from indemnification for attorneys' fees in the underlying Trenz action. Id.

On January 27, 2025, the Court granted partial summary judgment to Volkswagen. Dkt. 63. On February 4, 2025, the Court granted the parties' stipulation to voluntarily dismiss the claims asserted against Affinitiv, Inc. Dkt. 69. Accordingly, the only remaining issue in this case is damages, and the only remaining parties are plaintiff Volkswagen and defendant On-Line Administrators, Inc. d/b/a Peak Performance Marketing Solutions, now known as On-Line Administrators, LLC ("Peak"). The Court found in its summary judgment order that Michigan law governs this dispute, based on the choice-of-law provision set forth in the terms and conditions (the "2009 Terms & Conditions") that applied to the purchase orders between Volkswagen and Peak. Dkt. 63 at 14.

On February 18, 2025, the Court granted the parties' stipulation to set the trial as a bench trial. Dkt. 81. On April 2, 2025, the Court granted the parties' stipulation allowing trial to proceed on the papers. Dkt. 94. On April 18, 2025, Volkswagen filed its opening brief. Dkt. 100 ("OB"). Volkswagen also submitted the declaration of Aaron D. Van Oort ("Van Oort"), the declaration of Paul Karlsgodt ("Karlsgodt"), and the following exhibits: the 2009 Terms & Conditions, Ex. 3; the settlement agreement between Volkswagen and the Trenz plaintiff, Ex. 6; Volkswagen's fees spreadsheet, Ex. 7; Volkswagen's billing spreadsheet, with description of tasks, hours spent, and biller information, Ex. 8; a copy of the report of Peak's expert, John S. Pierce ("Pierce"), Ex. 23; and excerpts from Volkswagen's deposition of Pierce, Ex. 102. Dkt. 100-3. Volkswagen concurrently filed a request for judicial notice. Dkt. 101 ("RJN").

On May 2, 2025, Peak filed its answering brief. Dkt. 103 ("AB"). It also

2

submitted the declaration of Jay T. Ramsey ("Ramsey"); the declaration of Pierce; and Pierce's expert report, with the exhibits relied upon by Pierce. Dkts. 103-1, 103-2, 103-3.

On May 9, 2025, Volkswagen filed its reply brief. Dkt. 104 ("RB"). It also submitted additional excerpts from Pierce's deposition. Dkt. 104-2.

On May 19, 2025, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The background of this case is well-known to the parties. See dkt. 63 at 2-6. The Court recites facts relevant to the issue of damages, as set forth by the parties through declarations, court records, and Peak's expert, Pierce.

### A. Indemnification Provision and the Trenz Action

The indemnification provision of the 2009 Terms & Conditions states, in pertinent part, that "Supplier will, at its expense, indemnify… [Volkswagen] from and against all damages, losses, claims, liabilities and expenses (including reasonable attorneys' and other professional fees, settlements and judgments (collectively "Losses") claimed by any Third Person in any… suit… in connection with… The breach or misrepresentation by Supplier of its obligations or warranties to [Volkswagen] under these Terms[.]" OB at 8.

On October 26, 2015, Brian Trenz filed a complaint against Volkswagen and Peak in the United States District Court for the Central District of California. Id. The Trenz complaint alleged that Peak and Volkswagen violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Id. It consisted of two classes: (1) the Pre-October 16, 2013 Class, or the Brian Trenz ("Trenz")/Francis Breidenbach ("Breidenbach") Class, and (2) the Post-October 16, 2013 Class, or the Caitlyn Farrell ("Farrell")/Noelle Simms ("Simms") Class. Id. The plaintiffs alleged that at least 1,290,000 calls were made by Peak at Volkswagen's direction. Id. They sought penalties of up to $500 for each negligent violation and $1,500 for each willful violation.

3

<u>Id.</u>  This created exposure of approximately $2 billion for Volkswagen and Peak.  <u>Id.</u> at 8-9.

On September 25, 2017, this Court, the Honorable Judge André Birotte Jr. presiding, determined that class action plaintiff Breidenbach had provided consent under the TCPA, and thus summarily adjudicated his claim in favor of Volkswagen and Peak. <u>Id.</u> at 9.  The Court denied summary judgment as to plaintiff Trenz's claims.  <u>Id.</u>  The Court also granted class certification in the <u>Trenz</u> action, both for the Pre-October 16, 2013 Class, now led only by Trenz, and the Post-October 16, 2013 Class, led by Farrell and Simms.  <u>Id.</u>  On October 10, 2017, Volkswagen and Peak filed a Rule 23(f) petition for permission to appeal the class certification ruling.  <u>Id.</u>  On December 20, 2017, the Ninth Circuit denied the petition.  <u>See</u> <u>Brian Trenz, et al v. On-Line Administrators, Inc., et al</u>, Case No. 17-80206, dkt. 7.

On June 19, 2018, the <u>Trenz</u> action was reassigned to the Honorable Judge Josephine L. Staton.  Dkt. 100-2 ¶ 15.  On August 10, 2020, the Court reconsidered its order denying summary judgment as to plaintiff Trenz's claims, and instead entered an order granting summary judgment on his claims in favor of Volkswagen and Peak.  OB at 9.  The Court also decertified the Pre-October 16, 2013 Class, which had been led by plaintiff Trenz.  <u>Id.</u>  On March 25, 2022, pursuant to stipulation, the Court decertified the remaining Post-October 16, 2013 Class, represented by Farrell and Simms; dismissed Farrell and Simms' individual claims with prejudice; dismissed the Post-October 16, 2013 Class's claims without prejudice; and entered final judgment.  <u>Id.</u>  On April 22, 2022, plaintiff Trenz filed an appeal of the previous summary judgment and class decertification rulings.  <u>Id.</u>  This appeal was voluntarily dismissed.  <u>Id.</u>

**B. Attorneys' Efforts on the <u>Trenz</u> Action**

Volkswagen retained two law firms to represent it in the <u>Trenz</u> action: Baker & Hostetler LLP ("Baker") and Faegre Drinker Biddle & Reath LLP ("Faegre").  <u>Id.</u> at 14. In total, between 2015 and 2022, Volkswagen's attorneys billed for 4,721.34 hours of work, resulting in $2,245,305.62 in fees.  <u>Id.</u>  Volkswagen also incurred $91,260.62 in

4

costs. Id. Peak, meanwhile, retained Sheppard Mullin Richter and Hampton ("Sheppard Mullin"). Dkt. 103-1 ¶ 5. Peak's attorneys billed $1,010,714.50 on the matter. Dkt. 103-3 at 14.

For Volkswagen, a total of 19 timekeepers at Baker billed 4,460.80 hours on the Trenz action. OB at 14-15. This is broken down by 1,612.70 hours for partners, 2,466.10 hours for associates, 350.9 hours for paralegals, and 31.1 hours for litigation support. Id. at 14. The initial partner and associate working on the Trenz action for Baker left the firm less than a year into the case. Id. at 15. Baker partner Karlsgodt and associate Matthew Pearson ("Pearson") then took over the case, focused on TCPA issues and briefing. Id. Once the classes were certified, partner Billy Donley ("Donley") and then-associate Rachel Hooper ("Hooper") joined the team as trial counsel. Id. Marc Flink ("Flink"), partner, only assisted with the Rule 23(f) petition. Id. Paralegal Sharon Beer helped with document productions and exhibit preparations. Id.

At Faegre, a total of nine timekeepers billed 260.54 hours on the Trenz action. Id. at 16. This is broken down by 182.54 hours for partners, 77.6 hours for associates, and 0.4 hours for litigation support. Id. Faegre partner Van Oort performed the most work. Id. Faegre was originally engaged to assist with the Rule 23(f) petition, and was engaged again in March 2018, to assist with settlement negotiations. Id. Faegre's Rule 23(f) work was performed under flat fee agreements. Id. When Faegre was brought back into the case in March 2018, it initially worked under an hourly fee agreement, but some work was performed under flat fee agreements starting in July 2018. Id. The flat fee was adjusted depending on the amount of work performed. Id. Beginning in February 2020, Faegre proceeded on a purely hourly fee agreement. Id.

Volkswagen asserts that its attorneys worked on significant briefing in the Trenz action, including two motions to dismiss, two motions for summary judgment, a Rule 23(f) petition, a motion to certify immediate appeal, class certification and decertification briefing, and supplemental briefing on class decertification. Id. at 9-12. As for the October 19, 2018 motion to decertify the class, Volkswagen asserts that its

5

attorneys "were tasked with drafting the motion [] and preparing supporting documents." Id. at 11. Peak states that both side's attorneys were "involved equally" in the preparation of documents for this motion, and that in this instance, Baker provided an initial draft and Peak's attorneys provided a "substantial re-write." Dkt. 103-1 ¶ 9. As for the November 1, 2019, supplemental brief in support of the class decertification motion, Volkswagen asserts that its attorneys "took the laboring oar with preparing a majority of the [] brief and supporting documents." OB at 12. Peak states that both sides worked on competing drafts, which were ultimately merged together and edited by each side. Dkt. 103-1 ¶ 10.

Volkswagen's attorneys also spent time on discovery and trial preparations. OB at 12. There were ten depositions taken in total, including two expert depositions (one for plaintiffs and one for defendants), as well as two Volkswagen 30(b)(6) deponents. Id. at 12-13. The depositions occurred in-person and varied in location. Id. at 13. Written discovery included four sets of requests for productions and four sets of interrogatories propounded on Volkswagen. Id. Volkswagen also produced approximately 5,000 pages in response to discovery requests. Id. Further, Volkswagen states that the Trenz action involved extensive third-party discovery, including subpoenas to approximately 100 Volkswagen dealers and a review of thousands of documents received from the dealers. Id. Volkswagen states that it was in frequent contact with dealers due to its working relationship with them. Id. Peak asserts, however, that its attorneys "handled all of those subpoenas." Dkt. 103-1 ¶ 11. Finally, Volkswagen states that its attorneys spent time resolving discovery disputes in three discovery conferences. OB at 13.

Additionally, Volkswagen's attorneys engaged in settlement communications. Id. Volkswagen and the Trenz plaintiffs participated in mediations on December 14, 2018, and February 6, 2020. Id. at 14. These required Volkswagen's attorneys to prepare briefs and settlement analyses, and to discuss settlement with plaintiffs' counsel before and after each mediation. Id. Volkswagen states that often, Peak's counsel was not involved. Id. On May 19, 2022, Volkswagen and plaintiff Trenz entered into a release

and settlement agreement whereby Volkswagen agreed to pay $275,000 to Trenz and his

attorneys in exchange for dismissal with prejudice of the claims pending on appeal.  Id.

### C. Pierce's Expert Report

In his report, Pierce states that he was retained by Peak's counsel to review,

evaluate, and provide his independent opinions as to the reasonableness of Volkswagen's

attorneys' fees in the Trenz action.  Dkt. 103-3 at 1.  Pierce asserts that he is an "A.V.-

rated trial attorney with more than 47 years of litigation and trial experience in a broad

range of complex commercial litigation matters."  Id. at 6.  He is currently a capital

partner in the San Francisco office of Hinshaw & Culbertson, LLP.  Id.  Pierce states that

for the last 34 years, he has "served as an arbitrator, a litigator, consultant and/or expert

witness in a wide range of legal fee dispute cases."  Id. at 7.  In that time, he has

"reviewed and analyzed well over $4.5 billion in law firm invoices reflecting legal fees

and costs generated in litigation matters."  Id.  He also frequently lectures on the topics

of litigation management and allocation and reasonableness of attorneys' fees.  Id.

Pierce asserts that Baker and Faegre's hourly rates were at or below the prevailing

hourly billing rates for similar commercial litigators in Los Angeles, based on Real Rate

Reports from 2015 to 2022.  Id. at 11-13.  Pierce then asserts that the hours billed by

Baker and Faegre were unreasonable.  Id. at 15.  Pierce states that Volkswagen's staffing

was 193.33% greater than Peak's staffing; the hours billed by Volkswagen's attorneys

were 258.88% greater than the hours billed by Peak's attorneys; and Volkswagen's fees

were 203.25% more than Peak's fees.  Id. at 15-17.

Pierce then focuses on two projects as "examples" of Volkswagen's excessive

hours and fees: the parties' joint motion for decertification, filed on October 19, 2018,

and their joint supplemental brief in support of the motion for decertification, filed on

November 1, 2019.  Id. at 17-18.  Pierce states that Volkswagen's lawyers billed a

collective 300.40 hours and $129,336.00 in legal fees on drafting the motion to decertify

the class, while Peak's lawyers billed a total of 124.05 hours and corresponding

$70,752.50 in legal fees for the same project.  Id. at 17.  As for the supplemental brief,

Pierce asserts that Volkswagen's lawyers billed a collective 284.84 hours and $121,483.58 in legal fees, while Peak's lawyers billed a total of 98.40 hours and corresponding $55,676.50 in legal fees for the same project. <u>Id.</u> at 18.

Next, Pierce asserts that many billing entries of Baker partners are "vague," such as "Work on subpoena issues"; "Work on case strategy"; "Various correspondence with team"; "Follow up regarding discovery issues"; and "Follow up regarding expert witness." <u>Id.</u> at 21-24.  Pierce states that some entries are vague because they are excessively redacted, such as "Legal research regarding [redacted]" and "Call with P. Karlsgodt to assess [redacted]." <u>Id.</u> at 25-26.  Pierce suggests a total of $105,213.98 in deductions for vague billing entries. <u>Id.</u> at 27.  Additionally, Pierce argues that Volkswagen's lawyers improperly block-billed, as Baker timekeepers billed 342.20 hours and $148,036.50 in increments of one-hour or more, while Faegre timekeepers billed 64.70 hours and $40,047.30 in increments of one-hour or more. <u>Id.</u> at 33.  Pierce opines that a 25% deduction in block-billed fees is appropriate, as well as a 30% deduction for fees with descriptions that are excessively redacted. <u>Id.</u> at 33, 37.

## III.   LEGAL STANDARD

To determine the reasonableness of attorneys' fees under Michigan law, the court is first "required to determine 'the reasonable hourly or daily rate customarily charged in the locality for similar legal services, using reliable surveys or other credible evidence.'" <u>Woodman v. Dep't of Corr.</u>, 511 Mich. 427, 451 (2023) (citing <u>Smith v. Khouri</u>, 481 Mich. 519, 522 (2008)).  Second, the court must "multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." <u>Id.</u> (citing <u>Pirgu v. United Servs. Auto. Ass'n</u>, 499 Mich. 269, 281 (2016)).  Thereafter, the court must consider a non-exhaustive list of factors "to determine whether an up or down adjustment is appropriate." <u>Pirgu</u>, 499 Mich. at 281.  These factors, set forth in the Michigan Rules of Professional Conduct, Rule 1.5(a), include:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the

services, (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, (3) the amount in question and the results obtained, (4) the expenses incurred, (5) the nature and length of the professional relationship with the client, (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer, (7) the time limitations imposed by the client or by the circumstances, and (8) whether the fee is fixed or contingent.

Id. at 282.  The burden of proving reasonableness rests with the party requesting the attorneys' fees.  Id. at 281, n.45.

## IV.    DISCUSSION

As an initial matter, as requested by Volkswagen, the Court takes judicial notice of the court file in the Trenz action.  See RJN.  Pursuant to Federal Rule of Evidence 201(b), the Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  These materials are directly related to the issue of damages, as the parties primarily dispute whether the time and labor spent by Volkswagen's attorneys in the Trenz action was reasonable.

The Court examines each category of Volkswagen's damages request in turn.

### A. Attorneys' Fees and Costs

Volkswagen argues that it is entitled to attorneys' fees pursuant to the 2009 Terms & Conditions, as its attorneys reasonably expended 4,721.34 hours litigating the Trenz action over seven years, resulting in $2,245,305.62 in fees and costs.  OB at 18.

Volkswagen first contends that its counsel's billing rates are reasonable and comparable to similar Los Angeles area firms.  Id. at 19.  Second, Volkswagen contends that its attorneys reasonably billed 4,721.34 hours, largely on discovery, briefs, and settlement communications.  Id. at 20.  According to Volkswagen, discovery included

written discovery, ten depositions, third-party discovery involving subpoenas to 100 dealers, thousands of documents, meet and confer discussions, and discovery conferences.  Id.  As for briefs, Volkswagen states that its attorneys prepared two motions to dismiss, two motions for summary judgment, class certification and decertification briefing, a Rule 23(f) petition, and a motion to certify immediate appeal. Id.  As for settlement, Volkswagen contends that its attorneys participated in two mediations and spent "hours" discussing settlement with the Trenz plaintiffs' counsel. Id. at 20-21.

Volkswagen states that its 28 timekeepers did not work on the case at one time. Id. at 21.  Rather, Volkswagen argues that the "core team" at Baker consisted of two partners and two associates, while the "core team" at Faegre was "mostly one partner and sometimes one associate."  Id.  Volkswagen then argues that other relevant factors—including results obtained, experience of the lawyers, difficulty of the case, the length of its relationship with counsel, and the fact that its counsel was precluded from other employment while working on Trenz—supports its request.  Id. at 22-24.  Volkswagen asserts that it did not place any restrictions on its attorneys during the litigation, as its "goal was a successful defense," given that it was the defendant with "deep pockets" that would be responsible for any judgment should Peak not be able to pay its share.  Id. at 24.

Separately, Volkswagen disputes any argument that Volkswagen's fees should be reduced to align with the fees incurred by Peak in the Trenz action, because Volkswagen's attorneys performed "substantially more work."  Id.  Volkswagen also disputes the methodology and reasoning of Peak's expert, Pierce, stating that his opinion "is only based on the work performed by both parties for the joint motion to decertify and the supplemental brief on decertification."  Id. at 25-26.

In opposition, Peak argues that the number of hours expended on the Trenz litigation by Volkswagen's attorneys was not reasonable.  AB at 9.  Peak contends that the Trenz action was "a standard TCPA case," for which the law was well-developed.

Id.  Peak states that the litigation lasted for seven years only because some rulings were reconsidered, and because of pandemic-related delays.  Id.  Peak argues that there were only 12 substantive motions in the litigation.  Id. at 9-10.  Peak next contends that discovery was "fairly limited," as there were ten depositions in total, including "straightforward" depositions of the named plaintiffs.  Id. at 10.  Peak asserts that the volume of documents produced "is small" compared to other litigation and only fills two bankers' boxes.  Id.  Peak states that, according to Pierce, only $1,096,770.44 of the fees requested by Volkswagen are reasonable.  Id.

Relying on Pierce's report, Peak asserts that Volkswagen unreasonably employed two law firms in the Trenz action, with 19 timekeepers from Baker and ten timekeepers from Faegre.  Id.  Peak also describes the staffing as partner-heavy.  Id.  Peak argues that Faegre unreasonably spent 100 hours on each mediation.  Id. at 11.  Peak further argues that Baker unreasonably billed 4,460.10 hours, 2.5 times more than Peak's counsel, Sheppard Mullin, which billed 1,823.5 hours.  Id.  Peak disputes Volkswagen's argument that Volkswagen's attorneys took on "vastly" more work.  Id. at 12.  Rather, Peak argues, without support, that Pierce confirmed that when the parties worked jointly, the same work was done by both sets of attorneys.  Id. at 12.  Peak also argues, with the support of Ramsey's declaration, that both parties were equally involved in preparing documents for the motion for class certification; that both parties prepared drafts of the supplemental briefing, which were ultimately merged; and that Peak's counsel "took the laboring oar" in subpoenaing dealers.  Id. 12-13.  Additionally, Peak questions Karlsgodt's assertion that Baker attorneys Donley and Hooper were brought on for trial preparation, when "[t]he matter never got close to trial."  Id. at 14.  Given that Donley and Hooper each billed more than 700 hours, Peak asserts that it is "unclear why so much of their time would have been needed, or why it would not have been duplicative" of Karlsgodt and Pearson's work.  Id.  According to Peak, Pierce opines that a reduction of 85% of the differential between the hours billed by Volkswagen's attorneys and those billed by Peak's attorneys is appropriate.  Id.  Next, Peak argues that Volkswagen's fees

11

must be reduced to account for vague entries, block billing, and redactions, resulting in a reduction of $160,132.57.  Id.  Finally, Peak contends that there are discrepancies in Volkswagen's entries between what was actually performed and what was actually billed, resulting in overbilling of $87,172.05.  Id. at 15.

Separately, Peak argues that Volkswagen's attacks on Pierce's report are meritless.  Id.  Peak states that it is appropriate to compare the hours billed by Peak and Volkswagen because they were sued for the same reason, engaged in the same or similar discovery, and filed the same or similar pleadings.  Id.  Peak argues that Volkswagen's challenges go to the weight of Pierce's opinion, not its admissibility.  Id. at 18.

In reply, Volkswagen argues that with $2 billion at risk, it was not unreasonable to engage two law firms, especially since only Baker was engaged at first.  RB at 5.  Next, Volkswagen asserts that of the 19 Baker timekeepers, only seven performed more than 100 hours of work.  Id. at 6.  Of the ten Faegre timekeepers, Volkswagen states that only one performed more than 100 hours of work.  Id.  Volkswagen states that Pierce did not confirm attorney hours or that the work performed by Volkswagen's and Peak's attorneys was the same.  Id. at 6-7.  As for the motion to decertify, Volkswagen asserts that "[o]ne day of editing versus days of drafting and researching" are not the same.  Id.  Further, Volkswagen contends that its attorneys prepared lengthier declarations and supporting documents than Peak's attorneys.  Id.  Volkswagen argues that its trial team was necessary, as the Trenz class action was set for trial on August 6, 2019.  Id. at 8.

Volkswagen next argues that Pierce's comparisons are flawed because he looked at only two projects, completed in a short time span, in a case that spanned seven years. Id. at 10-11.  Further, according to Volkswagen, Pierce testified that his comparison was subjective and that some excluded entries should have been included in the analysis for Sheppard Mullin.  Id. at 11-12.  Additionally, Volkswagen asserts that Pierce incorrectly stated the number of partners and associates working on the Trenz action for Volkswagen.  Id. at 14.  Volkswagen argues that Pierce did not consider that Volkswagen faced more risk than Peak.  Id.  Volkswagen contends that Pierce used a

12

third-party company to complete the work that he relied upon and that he did not know his own methodology. Id. at 15. Further, Volkswagen states that Pierce did not look at any of the redacted entries to determine if sufficient context was provided. Id. at 16.

Because there is no dispute as to the reasonableness of Baker's and Faegre's hourly rates, the Court focuses its analysis on the time and labor reasonably required to litigate the Trenz action. The Court finds that the time and labor expended by Volkswagen's attorneys was largely reasonable. The Court recognizes that the briefing completed in the Trenz action was significant, including two motions to dismiss, two motions for summary judgment, a Rule 23(f) petition regarding the class certification ruling, a motion to certify immediate appeal regarding the Court's denial of summary judgment, class certification and decertification briefing, and supplemental briefing on class decertification. In addition to briefing, Volkswagen's attorneys engaged in discovery and successful settlement negotiations. The Court finds that it was reasonable for Volkswagen to commit significant time to complete these tasks and to aggressively litigate this matter. Peak does not appear to deny that defending the Trenz action required significant effort, but rather argues that Volkswagen's attorneys did not work efficiently on the matter. Peak relies on the fact that its own attorneys billed only 1,823.5 hours to the Trenz action, less than half of the time billed by Volkswagen's attorneys, even while Peak was responding to the same lawsuit.

The Court is not persuaded by Peak's argument. Neither Peak, nor its expert, Pierce, appear to acknowledge the differing positions of Volkswagen and Peak as co-defendants in the underlying Trenz action. As Volkswagen states, the risk of the litigation "was felt more strongly" by Volkswagen "[a]s the defendant with 'deep pockets,'" which "would have been liable for any judgment amount if Peak was unable to pay its share." OB at 9. Accordingly, the Court finds it reasonable that Volkswagen would have a greater incentive to defend the case, and would therefore take on substantially more work than Peak. In other words, the fact that Peak's lawyers billed fewer hours does not necessarily indicate that Peak's lawyers worked more efficiently

than Volkswagen's lawyers.  Rather, the Court finds that the status of the co-defendants and their billing patterns indicates that Volkswagen's attorneys led the defense, while Peak's attorneys largely took a secondary role.  The Court agrees with Volkswagen that Pierce did not "confirm" that the work performed by Volkswagen's and Peak's attorneys during all stages of the <u>Trenz</u> litigation was the same or similar.  As to settlement specifically, it appears that Volkswagen's attorneys led discussions and that only Volkswagen signed the agreement.  Dkt. 100-1 ¶ 11; dkt. 98-1 at 7-8.  This is true even though the ultimate agreement also benefitted Peak, requiring the plaintiff to release all of his claims against Peak.  <u>See</u> dkts. 98-1, 102.  Meanwhile, it is undisputed that Peak denied Volkswagen's July 29, 2016 indemnification and defense request, and later denied Volkswagen's April 11, 2022 request for Peak to pay the settlement amount. Dkt. 60 ¶¶ 43-44, 53-54.  This further demonstrates that Volkswagen acted reasonably in aggressively litigating and settling <u>Trenz</u>, as it was unclear at the time if Peak would ultimately indemnify Volkswagen against all potential losses from the lawsuit.

Using the "Task Codes" provided in Volkswagen's billing spreadsheet, <u>see</u> dkt. 100-3, Ex. 8, the Court has attempted to categorize Volkswagen's entries to evaluate their reasonableness.  The Court provides an approximate breakdown:

| Category | Hours |
|---|---|
| Research, Fact Investigation, Analysis/Strategy | 1284.94 |
| Document/File Management, Budgeting, Other Case Administration | 415 |
| Pleadings | 115.8 |
| Discovery | 1474.8 |
| Trial Court Motions | 396.4 |
| Appellate Motions, Submissions, and Briefs | 89.4 |
| Class Action Certification and Notice | 544.2 |
| Experts and Trial Preparation | 43 |
| Hearing Attendance and Court-Mandated Conferences | 47.8 |

| Settlement | 190.2 |
|---|---|
| No Task Code Provided | 119.8 |
| **TOTAL** | 4721.34 |

In a large class action like <u>Trenz</u>, it appears reasonable that Volkswagen's attorneys spent the majority of their time on discovery and analysis and strategy, as well as significant time on issues related to class certification and trial court motions. Nevertheless, the Court identifies several areas in Volkswagen's billing entries that may be subject to deductions.  First, the Court examines Volkswagen's billing entries for duplications.  Volkswagen states that Baker partner Flink "only assisted with the Rule 23(f) petition," billing approximately 76 hours and $31,160.  OB at 15.  Volkswagen's billing entries show that five other Baker timekeepers also worked on the Rule 23(f) petition, billing $20,047.50.  Dkt. 100-3, Ex. 8.  Further, Volkswagen states that Faegre partner Van Oort was brought into the case in October 2017 to assist with the Rule 23(f) petition, for a $14,000 fixed fee.  OB at 16.  It appears to the Court that a portion of these efforts was duplicative, and Volkswagen has not demonstrated otherwise.  While it may have been reasonable for Van Oort to work with Flink on the Rule 23(f) petition, the Court concludes that the $20,047.50 billed by the five other Baker timekeepers was duplicative.  The Court therefore finds it appropriate to deduct $20,047.50 from Volkswagen's requested fees.  <u>See</u> <u>Sabbagh v. Hamilton Psychological Servs., PLC</u>, 329 Mich. App. 324, 361, n.8 (2019) ("It goes without saying that legal expenditures for duplicative work 'are properly excluded when determining what constitutes a reasonable attorney fee[.]'").

Additionally, it appears that attorney time was at least partially duplicated after Baker partner Donley and then-associate Hooper joined the team.  Volkswagen asserts that Donley and Hooper were engaged as trial counsel and focused on trial preparation, while Baker partner Karlsgodt and associate Pearson remained focused on TCPA issues and briefing.  OB at 15.  However, using the "Task Codes" in Volkswagen's spreadsheet

and the Court's approximate categories, the hours billed by Karlsgodt and Pearson on the one hand, and Donley and Hooper on the other, appear as follows:

| Category | Karlsgodt & Pearson Hours | Donley & Hooper Hours |
|---|---|---|
| Research, Fact Investigation, Analysis/Strategy | 257.7 | 463.1 |
| Document/File Management, Budgeting, Other Case Administration | 36.5 | 19.9 |
| Pleadings | 53.5 | 15.7 |
| Discovery | 576 | 827 |
| Trial Court Motions | 197.4 | 172.8 |
| Appellate Motions, Submissions, and Briefs | 69.4 | 0 |
| Class Action Certification and Notice | 544.1 | 0 |
| Experts and Trial Preparation | 21.5 | 21.5 |
| Hearing Attendance and Court-Mandated Conferences | 37.1 | 0 |
| Settlement | 79.5 | 0 |
| No Task Code Provided | 0 | 0 |
| **TOTAL** | 1872.7 | 1520 |

Based on these categories, the exact division of labor between the Karlsgodt and Pearson team and the Donley and Hooper team is not clear. The largest overlap of work appears to have occurred in the areas of analysis/strategy, discovery, and trial court motions. While the Court understands from Volkswagen's declarations that the analysis/strategy work completed by Karlsgodt and Pearson was distinct from the analysis/strategy work completed by Donley and Hooper, Volkswagen has not explained how their efforts on discovery and trial court motions were distinct and necessary. As it is Volkswagen's burden to prove that its fees are reasonable, and Volkswagen did not provide a justification for Donley and Hooper's efforts other than trial preparation, the Court finds that a 20% deduction for Donley and Hooper's hours on discovery and trial

court motions is warranted.  As Hooper and Donley billed $360,021.00 on discovery and $75,200.00 on trial court motions, totaling $435,221.00, a 20% deduction is equivalent to $87,044.20.  See Int'l-Matex Tank Terminals-Ill. v. Chem. Bank, No. 1:08-CV-1200, 2010 WL 3222515, at *7 (W.D. Mich. June 16, 2010), report and recommendation adopted sub nom. Int'l-Matez Tank Terminals-Ill. v. Chem. Bank, No. 1:08-CV-1200, 2010 WL 3238917 (W.D. Mich. Aug. 16, 2010) (applying Michigan law and deducting 20% of attorneys' fees that were described as an inefficient and duplicative expenditure of time).

Next, the Court considers whether any of Volkswagen's billing entries were impermissibly vague or block-billed.  While Michigan courts have found that block billing is not per se improper, the Court must examine whether these entries were such that the Court cannot analyze "what tasks were performed, the relevance of those tasks to the litigation, and whether the amount of time expended on those tasks was reasonable." Lakeside Retreats LLC v. Camp No Couns. LLC, 340 Mich. App. 79, 98 (2022).  Here, the Court agrees with Pierce's findings that a total of $105,213.98 in attorneys' fees contained vague descriptions that prevented the Court from sufficiently examining their reasonableness. Dkt. 103-3 at 27.  These include entries such as "Work on case strategy," "Follow up on discovery issues," and "Conduct legal research regarding REDACTED."  See dkt. 100-3, Ex. 8.  Additionally, the Court agrees with Pierce's findings that a total of $188,083.80 in fees were billed in increments of one-hour or more, preventing the Court from identifying exactly how much time was spent on each billed task. Dkt. 103-3 at 33.  These include entries such as the 9.7 hours billed as one entry on March 4, 2017, for approximately five tasks. Dkt. 100-3, Ex. 8.

The Court finds that a 15% deduction is appropriate here for the identified vague and block-billed entries, totaling $43,994.67 overall.  See also Vogel v. Desaegher, No. 339763, 2019 WL 488765, at *5 (Mich. Ct. App. Feb. 7, 2019) (affirming trial court that reduced certain requested attorneys' fees by 6% for impermissibly vague billing entries); See Int'l-Matex Tank Terminals-Ill. v. Chem. Bank, 2010 WL 3222515, at *8-9

(applying Michigan law and noting that "plaintiff's method of block billing makes it difficult to excise unreasonable time with any precision," forcing the Court to make "a rough estimation" of the time spent on each task); Gratz v. Bollinger, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (applying federal law and finding that "a ten percent (10%) reduction in Maslon's requested fees is appropriate due to its attorneys' block billing and vague entries.").

In total, the Court finds that a deduction of $151,086.37, or 7% of Volkswagen's $2,154,045.00 request, is warranted, due to duplicative efforts, block-billing, and vague billing. The remainder of Volkswagen's request is reasonable, entitling Volkswagen to recover $2,002,958.63 in attorneys' fees. Additionally, the Court agrees with both parties that Volkswagen's requested $91,260.62 in costs is reasonable.

**B. Settlement Amount**

Volkswagen argues that the 2009 Terms & Conditions allow for recovery of the full $275,000 settlement amount, as the word "settlement" is not qualified. OB at 26-27.

In opposition, Peak argues that the Court should award only $6,000 for Volkswagen's settlement of the Trenz action. AB at 18. Peak states that Volkswagen settled with only one plaintiff for $6,000, after the trial court had entered summary judgment on his individual claims and de-certified the class. Id. at 18-19. Peak contends that the $269,000 directed toward Trenz's attorneys was unreasonable, because Trenz could not recover any attorneys' fees, even if he prevailed, as the TCPA does not provide for attorneys' fees and the case was no longer a class action. Id. at 19.

In reply, Volkswagen argues that "reasonable" only modifies "attorneys' fees" in the 2009 Terms & Conditions, but that regardless, the settlement was reasonable, because the Trenz plaintiff appealed the order decertifying the class. RB at 17-18.

Assuming, without deciding, that "reasonable" modifies "settlement" in the 2009 Terms & Conditions, the Court finds that Volkswagen's settlement with the Trenz plaintiff and his attorneys was reasonable. When the Trenz plaintiff appealed to the Ninth Circuit, he also appealed Judge Staton's order decertifying the class. See Brian

1  Trenz v. On-Line Administrators, Inc. et al. Case No. 2-15-cv-08356-AB-KS, dkt. 269.

2  The Court therefore finds that Volkswagen's settlement was reasonable for the same

3  reasons discussed in its summary judgment order, dated January 27, 2025:

> It is undisputed that the Trenz plaintiffs alleged that at least 1,290,000 calls were
> made by Peak at Volkswagen's direction, including 490,000 calls made during the
> period covered by plaintiff Trenz's class. SUF ¶ 46. It is also undisputed that the
> Trenz plaintiffs sought penalties of up to $1,500 per violation. Id. ¶ 45. Thus,
> accounting only for calls and violations alleged in plaintiff Trenz's class—as his
> claim was the only one appealed and settled—Volkswagen faced a potential
> exposure of $735,000,000 if Trenz prevailed on appeal and later at trial. Even
> assuming plaintiff Trenz's likelihood of prevailing was low, Volkswagen settled
> for less than 0.04% of its potential exposure amount, at $275,000.

13  Dkt. 63 at 18. Peak takes issue with the portion of the settlement directed to the

14  plaintiff's attorneys. The Court is not persuaded by Peak's argument that it was

15  unreasonable for the plaintiff's attorneys to receive $269,000 in compensation, while

16  Peak's own attorneys billed $1,010,714.50 as a defendant in the same action. Further,

17  while Peak did not sign the settlement agreement, it appears to the Court that Peak

18  benefited from it, as it required the plaintiff to release all of his claims against Peak. See

19  dkts. 98-1, 102. Accordingly, assuming arguendo that the 2009 Terms & Conditions

20  require a reasonable settlement, the Court concludes that Volkswagen's $275,000

21  settlement was reasonable and is recoverable in full.

22  **C. Prejudgment Interest**

23  Volkswagen argues that Michigan law allows for the recovery of prejudgment

24  interest here. OB at 27 (citing M.C.L. § 600.6013(8)). Volkswagen asserts that, on May

25  19, 2025, it will be owed approximately $240,000 in prejudgment interest. Id.

26  In opposition, Peak argues that Volkswagen does not explain how it calculated

27  prejudgment interest, and therefore its request should be denied. AB at 19.

28  In reply, Volkswagen argues that the Court should award prejudgment interest

using the formula provided in M.C.L. § 600.6013(8), even if the amount is modified depending on the Court's ultimate award.  RB at 18.

As this Court exercises jurisdiction over this matter based on diversity of citizenship, prejudgment interest must be determined in accordance with state law.  See In re Cardelucci, 285 F.3d 1231, 1235 (9th Cir. 2002) ("In diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates while post-judgment interest is determined by federal law."); Est. of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co., 421 F.3d 400, 409 (6th Cir. 2005) (same). Under Michigan law, prejudgment interest is calculated as follows:

> [F]or complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.  Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs[.]

M.C.L. § 600.6013(8).  "This interest award is mandatory, not discretionary."  Stryker Corp. v. XL Ins. Am., Inc., No. 1:17-CV-66, 2020 WL 6319170, at *3 (W.D. Mich. Sept. 15, 2020).  "The prejudgment interest statute is remedial in nature and is to be construed liberally in favor of the prevailing party.  [Its purpose] is not only to compensate the prevailing party for the delay in the use of the money, but also to offset the costs of bringing the action and to provide an incentive for prompt settlement." Perceptron, Inc. v. Sensor Adaptive Machines, Inc., 221 F.3d 913, 923 (6th Cir. 2000) (citations omitted).

Here, Volkswagen's complaint was filed on August 11, 2023, and the amount determined recoverable—$2,002,958.63 in attorneys' fees, $91,260.62 in costs, and $275,000 from the settlement agreement—is a money judgment to be recovered in a civil

action.  While Volkswagen states that it is entitled to approximately $240,000 in prejudgment interest, it has not provided these calculations to the Court.  The Court requests that Volkswagen submit its calculations of prejudgment interest pursuant to M.C.L. § 600.6013(8) for a money judgment of $2,369,219.25, comprising $2,002,958.63 in attorneys' fees, $91,260.62 in costs, and $275,000 from the settlement agreement, by May 29, 2025.  Peak shall submit any objection to this calculation by June 2, 2025.  See Stryker, 2020 WL 6319170, at *3 (verifying the plaintiff's M.C.L. § 600.6013(8) calculations before awarding prejudgment interest).

## IV.    CONCLUSION

In accordance with the foregoing, the Court finds that Volkswagen is entitled to $2,369,219.25 in damages.  The Court **RESERVES JUDGMENT** on the prejudgment interest to be awarded to Volkswagen.

IT IS SO ORDERED.

Dated: May 27, 2025

Christina A. Snyder
UNITED STATES DISTRICT JUDGE